**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| KANDEE FLINT | CIVIL ACTION NO. 08-0514 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| RIVERSOURCE LIFE INSURANCE COMPANY | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion for Summary Judgment (Record Document 16) filed by the defendant, RiverSource Life Insurance Company ("RiverSource"). RiverSource contends that summary judgment is appropriate, as the undisputed material facts establish that it properly denied the demand for life insurance proceeds made by the plaintiff, Kandee Flint ("Flint"). See id. Flint opposes the Motion for Summary Judgment, arguing that summary judgment is not proper because there are questions of fact and credibility issues surrounding RiverSource's issuance of a Late Payment Offer. See Record Document 19. For the reasons which follow, the Motion for Summary Judgment is **DENIED**.

**I.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.**

On June 15, 1994, IDS Life Insurance Company ("IDS") issued a term life insurance policy ("the policy") to Stuart R. Flint ("Mr. Flint"). See Record Document 1-2, ¶ 3; Record Document 16, Exhibit 1A. The death benefits under the policy were $167,000. See Record Document 1-2, ¶ 3. Flint was the beneficiary of the policy. See id., ¶ 4. On or about January 1, 2007, IDS changed its name to RiverSource. See id., ¶ 4; Record Document 16, Exhibit 1 at ¶ 7.

Premium payments under the policy were due on a semi-annual basis. See Record

Document 1-2, ¶ 6; Record Document 16, Exhibit 1 at ¶ 13. The policy provides:

> This policy has a 31 day grace period for all premiums except the first one. This means that if a premium is not paid by its due date, the policy will stay in force during the 31 days immediately following the due date. You can pay the premium anytime during the 31 days, as long as it is received in our home office within the 31 day grace period.
>
> If a premium is not paid by the end of the grace period, this policy will lapse and no more premium payments may be made.

Record Document 16, Exhibit 1A at 8. The policy also sets forth the definition of "lapse":

> A premium payment is in default because it was not paid by the end of the grace period. The insured's life is no longer insured.

Id. at 5.

Mr. Flint's mailing address from May 2006 through August 2006 was 232 Forest Avenue, Shreveport, Louisiana, 71104-4507. See Record Document 16, Exhibit 2. RiverSource received no returned mail from Mr. Flint's address from April 2006 through August 2006. See id., Exhibit 1 at ¶ 30.

RiverSource uses an automated computerized billing system and a computerized consolidated statement process system. See id. at ¶ 5. According to Steve Rowley ("Rowley"),[1] both of these systems were working properly between May 2006 and July 2006. See id. at ¶ 6. The systems not only generate notices, statements, and offers, but also generate a "X-tend report," which contains information that can be used for future reference. See id. at ¶¶ 9, 16, 20, 22.

---

[1] Rowley is a Senior Life Insurance Service Associate, Service Delivery, Insurance Service and Transactions RiverSource Insurance. See Record Document 16, Exhibit 1 at ¶ 1. He processes billing, reinstatement, misapplied payments, transaction corrections, modified endowment issues, collateral assignments, payment issues, guideline limitations, and no lapse Guarantee Issues. See id. at ¶ 3.

On or about May 7, 2006, a Statement of Financial Accounts was generated by RiverSource's computerized consolidated statement process system and sent to Mr. Flint at his home address. See id. at ¶¶ 27-28. This statement provided that the next premium for the policy was due on June 15, 2006. See id. at ¶¶ 28-29; Record Document 16, Exhibit 1D.

On or about May 25, 2006, the automated computerized billing system generated a Payment Notice for the policy. See Record Document 16, Exhibit 1 at ¶15. The May 25, 2006 Payment Notice was sent to Mr. Flint at his home address. See id. This Payment Notice included the premium amount, premium due date of June 15, 2006, and mailing address for sending the payment. See id. at ¶ 17; Record Document 16, Exhibit 1B. RiverSource did not receive the June 15, 2006 premium payment. See Record Document 16, Exhibit 1 at ¶¶ 18, 23.

According to Ridley, the automated computerized billing system generates a Late Payment Offer "after a policy paid to date is more than 30 days in grace." Id. at ¶ 19. The Late Payment Offer notifies the client that the premium payment was not received by the end of the grace period, but the policy can be reinstated without evidence of insurability if payment is received by the home office by a certain date, which is specified on the Late Payment Offer. See id., Exhibit 1C.

The record in this matter contains two versions of a Late Payment Offer. The first version, which was attached to RiverSource's answer, is on RiverSource letterhead and provides:

> Your premium payment was not received by the end of the grace period ***[no date listed]***
> Subject to certain conditions on the reverse you can reinstate this policy

without evidence of insurability if we receive your payment [of $620.71] in the home office by **07/31/2006**.

Record Document 1-2, Exhibit A; Record Document 19, Exhibit F (emphasis added). This first version was also attached to a March 2008 letter sent to Flint by RiverSource. See Record Document 19, Exhibits C at 42-43 & F.

The second version, which was produced for the first time as an attachment to the to RiverSource's Motion for Summary Judgment, is on IDS letterhead and provides:

> Your premium payment was not received by the end of the grace period **7/15/06**
> Subject to certain conditions on the reverse you can reinstate this policy without evidence of insurability if we receive your payment [of $620.71] in the home office by **7/31/06**.

Record Document 16, Exhibit 1C.

RiverSource contends that the automated computerized billing system produced the Late Payment Offer on or about July 15, 2006, and that such offer was mailed to Mr Flint at his home address. See Record Document 16, Exhibit 1 at ¶ 21. Conversely, Flint contends that the Late Payment Offer was not sent until March 2008, or no earlier than January 1, 2007, due to the fact that the first version attached to the answer and produced to her in March 2008 was on RiverSource letterhead. See Record Document 19 at 6.

RiverSource never received the premium payment in the amount of $620.71. See Record Document 16, Exhibit 1 at ¶ 23. As of August 15, 2006, the policy was re-classified in RiverSource's system as "inactive" and of "no value." See id. at ¶ 32. According to Rowley, the policy had lapsed as a result of non-payment of the premium and Mr. Flint's life was no longer insured. See id. at ¶ 33.

In November 2006, Flint received a Personal Portfolio Review[2] dated 11/07/06. See Record Document 19, Exhibit I. The Personal Portfolio Review covered the time period of August 8, 2006 through November 7, 2006. See id. The policy, with a death benefit of $167,000, was listed under the Personal Portfolio Review's "Insurance Wealth Protection" section. Id.

Mr. Flint died on October 24, 2006. See Record Document 1-2, ¶ 7. On January 9, 2007, a request was made to RiverSource on behalf of Flint for the death benefits under the policy. See Record Document 1-2, ¶ 11. Flint also requested that RiverSource "provide any evidence of payment notice or late payment offer." Id. On January 22, 2008, another demand was made to RiverSource to pay the death benefits of the policy to Flint, the beneficiary. See id., ¶ 12. RiverSource responded to the demand with a form letter requesting a certified copy of the "Letters of Appointment" before they would release any information. Id., ¶ 13. On February 21, 2008, Flint's counsel provided RiverSource with a copy of the Judgment of Possession in Mr. Flint's succession and made another demand for the payment of the death benefits. See id., ¶ 14. RiverSource denied Flint's demand for payment of the $167,000 insurance proceeds because it believes the policy had lapsed. See Record Document 16, Exhibit 1 at ¶ 34.

On March 4, 2008, Flint filed a petition in the First Judicial District Court for the Parish of Caddo, State of Louisiana. See Record Document 1-2. She alleged that RiverSource has acted in an arbitrary and capricious manner, without probable cause, and

---

[2]Between May 2006 and November 2006 the name for quarterly statements changed from "Statement of Financial Accounts" to "Personal Portfolio Reviews." Record Document 22 at 2, n. 2.

abused its discretion in denying her the death benefits under the policy. See id., ¶ 16. She further alleges that RiverSource has failed and refused to negotiate in good faith and/or to pay amounts due, all in violation of Louisiana Revised States 22:1220, 22:656, and 22:658. See id., ¶ 17. After removing the matter to the this Court, RiverSource filed an answer, again contending that the policy has lapsed due to nonpayment prior to Mr. Flint's death. See Record Documents 1, 2, 3, 6.

RiverSource filed the instant Motion for Summary Judgment, seeking dismissal of the case, on January 30, 2009. See Record Document 16. This matter is currently set for bench trial on April 13, 2009. See Record Document 12.

## II. LAW AND ANALYSIS.

### A. Summary Judgment Standard in Nonjury Cases.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue

for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

In deciding a motion for summary judgment in a jury trial case, the court's chief concern is determining whether a given factual dispute requires submission to a jury. See Matter of Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991). Yet, in a bench trial, "there is no jury to whom such factual disputes may be submitted" and "the judge will be the ultimate finder of fact." Id. While it is true "that assessments of credibility come into sharper focus once live witnesses are heard, . . . even at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him as trier of fact in a plenary trial, could not possibly lead to a different result." Id. Thus, in a bench trial, a judge may draw inferences from the evidence submitted on summary judgment, "unless those inferences involve issues of witness credibility or disputed material facts." Id.; see also Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir.1978) ("If decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even though decision may depend on inferences to be drawn from what has been incontrovertibly proved. . . . A trial on the merits would reveal no additional data. Hearing and viewing the witnesses subject to cross-examination would not aid the determination if there are neither issues of credibility nor controversies with respect to the substance of the proposed testimony. The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial.").

**B. Witness Credibility and Disputed Material Facts Relating to the Late Payment Offer.**

RiverSource argues that summary judgment is appropriate in this matter because proper notice was given to the Flints in accordance with Louisiana Revised Statute 22:905.[3] Section 905 provides in pertinent part:

> No life insurer shall within one year after default in payment of any premium . . . declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium . . . required by the terms of the policy to be paid, unless a written or printed notice stating:
>
> (1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and
>
> (2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured . . ., at the last known post office address of such insured or assignee, postage prepaid by the insurer or any person appointed by it to collect such payment, at least fifteen and not more than forty-five days prior to the date when the same is payable.
>
> No policy shall in any case be forfeited or declared forfeited or lapsed until the expiration of thirty days after the mailing of such notice. Any payment demanded by such notice and made within the time limit shall be taken to be full compliance with the requirements of the policy in respect to the time of such payment.
>
> The affidavit of any officer, clerk or agent of the insurer . . . that the notice required by this section has been duly addressed and mailed by the insurer issuing such policy, ***shall be presumptive evidence*** that such notice has been duly given.

La. R.S. 22:905 (emphasis added). RiverSource also relies on <u>Kessler v. Great Western Life & Annuity Ins. Co.</u>, 2008-0378 (La.App. 4 Cir. 10/15/08), 997 So.2d 590, arguing that Rowley's affidavit, submitted in support of the Motion for Summary Judgment, created a

---

[3]Section 905 was formerly cited as Louisiana Revised Statute 22:177.

presumption that it sent the proper notice to the Flints.

While the instant matter is set for bench trial in April, the Court finds that there are issues of witness credibility and/or disputed material facts that prevent entry of summary judgment. As Flint stated in her opposition: "[T]he present matter hinges on the question of when the late payment offer was sent by either IDS or RiverSource [Life] to the Flints." Record Document 19 at 5. The record in this matter contains two versions of a Late Payment Offer. The first version is on RiverSource letterhead, while the second version is on IDS letterhead. The letterhead issue could be significant, as IDS changed its name to RiverSource on or about January 1, 2007. RiverSource contends that the Late Payment Offer was mailed in July 2006, when its name was IDS. Conversely, Flint contends that the Late Payment Offer was not mailed until March 2008, after IDS changed its name to RiverSource. The factual dispute relating to when the Late Payment Offer was sent is heightened by the mere existence of two versions of the Late Payment Offer.

A review of the Late Payment Offers contained in the record also reveals discrepancies between the two versions. The RiverSource letterhead version reads:

> Your premium payment was not received by the end of the grace period ***[no date listed]***
> Subject to certain conditions on the reverse you can reinstate this policy without evidence of insurability if we receive your payment [of $620.71] in the home office by ***07/31/2006***.

Record Document 1-2, Exhibit A; Record Document 19, Exhibit F (emphasis added). The IDS letterhead version reads:

> Your premium payment was not received by the end of the grace period ***7/15/06***
> Subject to certain conditions on the reverse you can reinstate this policy without evidence of insurability if we receive your payment [of $620.71] in the home office by ***7/31/06***.

Record Document 16, Exhibit 1C.  The Court notes that there is no date listed after "grace period" on the RiverSource letterhead version, while there is a date listed after "grace period" on the IDS letterhead version.  Moreover, the payment due date listed in the IDS letterhead version reads "7/31/06," not "07/31/2006" as set forth in the RiverSource letterhead version.

During his deposition, Rowley explained that the two versions are "recreated late payment offers" and the discrepancies, i.e., the letterhead, exist because he "did not change the template."  Record Document 22, Exhibit B at 45-46.  While this explanation might be plausible, it is the perfect example of an assessment of credibility that the Court believes will come into sharper focus once Rowley's live testimony is heard.  See Matter of Placid Oil Co., 932 F.2d at 398.  The mere existence of two versions of the Late Payment Offer, coupled with the discrepancies between the two versions, necessarily involves issues of witness credibility, namely the credibility of Rowley, and/or disputed material facts.  See id.  In this instance, hearing and viewing Rowley's testimony subject to cross-examination would aid the Court in accounting for the existence of two Late Payment Offers and its ultimate determination of when the Late Payment Offer was mailed to the Flints.  See Nunez, 572 F.2d at 1124.

This case is also distinguishable from Kessler, wherein the appellate court noted:

> Moreover, Great-West's records did not indicate that any of the notices failed to be generated, were sent to the wrong address, or were returned to Great-West.  ***At the hearing on the motion for summary judgment, Mrs. Kessler came forth with no evidence to rebut this presumption [under Section 905].***

Kessler, 997 So.2d at 593.  Here, Flint came forward with not only the two versions of the Late Payment Offers, but also a Personal Portfolio Review dated 11/07/06 which listed the

policy, and the death benefit of $167,000, as "Insurance Wealth Protection." At this stage, Flint has come forward with enough evidence to rebut the presumption under Louisiana Revised Statute 22:905 and proceed to a bench trial on the merits.

## III.   CONCLUSION.

Based on the foregoing, the Court finds that there are issues of witness credibility and/or disputed material facts relating to the Late Payment Offer. Accordingly, the Motion for Summary Judgment (Record Document 16) filed by RiverSource Life must be **DENIED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 9th day of March, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE